

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-23-1997

# In Re: Dorsainvil

Precedential or Non-Precedential:

Docket 96-8074

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

### Recommended Citation

"In Re: Dorsainvil" (1997). *1997 Decisions*. Paper 168.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 23, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-8074

IN RE: OCSULIS DORSAINVIL,
Petitioner

On Appeal from the United States District Court
for the Middle District of Pennsylvania

Argued May 1, 1997

Before: SLOVITER, Chief Judge,
STAPLETON and COWEN, Circuit Judges

(Opinion filed July 23, 1997)

James D. Crawford (Argued)
Wendy Bettlestone
Joseph T. Lukens
Schnader Harrison Segal & Lewis
Philadelphia, PA 19l03

 Attorneys for Petitioner

Elizabeth D. Collery (Argued)
 United States Department of
 Justice
 Appellate Section, Criminal Division
Washington, D.C. 20044

David M. Barasch
 United States Attorney,
 Middle District of Pennsylvania
Dennis C. Pfannenschmidt
 Assistant United States Attorney
 Middle District of Pennsylvania

 Attorneys for Respondent

**OPINION OF THE COURT**

SLOVITER, <u>Chief Judge</u>.

Ocsulis Dorsainvil has filed a motion pursuant to 28 U.S.C. §§ 2255 and 2244(b)(3)(A), as amended by the Antiterrorism and Effective Death Penalty Act, seeking certification to file a second § 2255 motion to vacate, set aside, or correct his sentence. After Dorsainvil'sfirst petition was denied on the merits, the Supreme Court issued its opinion in <u>Bailey v. United States</u>, 116 S.Ct. 501 (1995). Dorsainvil argues that <u>Bailey</u> renders his weapons conviction under 18 U.S.C. § 924(c)(1) invalid and asks that this court certify his second petition so that he may collaterally attack his § 924(c)(1) conviction in the district court.

**I.**

**<u>FACTS AND PROCEDURAL HISTORY</u>**

Following a jury trial, Ocsulis Dorsainvil was convicted in the United States District Court for the Middle District of Pennsylvania of conspiracy to distribute cocaine base, distribution of cocaine base, and use of a firearm during and in relation to drug trafficking, a violation of 18 U.S.C.

2

§ 924(c)(1). In the course of the trial the government introduced evidence that Dorsainvil and his co-defendant, Anel Louis, had arranged to sell some crack cocaine to an undercover policeman. When the police arrived, Dorsainvil was in the driver's seat of a pickup truck from which the drugs were to be sold. There was a gun in an open paper bag next to the driver's seat, in the center of the pickup truck. It was purchased by and registered to Dorsainvil. There was testimony from police officers that, as the officers moved in for the arrest after the buyer left to get the funds to complete the drug sale, Dorsainvil was fumbling with his pants, where cocaine was found, and making movements as if he were reaching for something in front of him. Dorsainvil did not touch the gun, and was arrested without incident. His wallet and personal papers were found in the bag with the gun after his arrest. He testified at trial and admitted that he possessed the gun, but he denied that the gun was related in any way to the drug transaction, stating that he bought it for protection while living in Florida. The jury convicted him on all counts.

Dorsainvil did not file a direct appeal, but sought collateral relief under 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel and double jeopardy. His pro se petition was denied on the merits by orders dated November 30, 1993, March 2, 1994, and April 22, 1994, and there was no appeal. On December 6, 1995, the Supreme Court decided Bailey v. United States, 116 S.Ct. 501 (1995), construing § 924(c)(1). Approximately nine months later, Dorsainvil filed a second pro se § 2255 petition in the district court. The district court ruled that it did not have jurisdiction to address the petition because of changes effected in § 2255 procedure by the recently enacted Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (the "AEDPA") (codified in relevant part at 28 U.S.C. § 2255), and that only this court could give the necessary certificate. Dorsainvil then filed a motion with this court for certification of his second petition for relief under § 2255. We denied his motion, but stayed our order, appointed Dorsainvil counsel, and invited counsel to brief a series of questions concerning the AEDPA's newly enacted gatekeeping provisions.

3

**II.**

**DISCUSSION**

**A.**

Under the AEDPA, before a successive § 2255 motion may be considered by the district court, it must be certified by a three judge panel of the court of appeals to contain:

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

Dorsainvil had been convicted, <u>inter alia</u>, for using and carrying a firearm in violation of 18 U.S.C. § 924(c)(1). The language of that section, which imposes punishment upon a person who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm," was construed in <u>Bailey</u>, where the Supreme Court held that a defendant could not be convicted of using a firearm under that statute unless the government proved that the defendant "actively employed the firearm during and in relation to the predicate crime." 116 S. Ct. at 509. Dorsainvil claims that there was insufficient evidence to show that he actively employed a firearm in relation to a drug trafficking crime and that he is therefore imprisoned for conduct that the Supreme Court has determined is not illegal.

In the posture of the matter before us, our task is not to determine if, in fact, Dorsainvil used a firearm in a manner that satisfied the Supreme Court's <u>Bailey</u> interpretation but whether the AEDPA precludes a court from reaching the merits. Because this is Dorsainvil's second § 2255 petition, we may grant Dorsainvil's motion for a certificate only if

4

Dorsainvil meets one of the two prongs of § 2255's gatekeeping provision. Dorsainvil argues that he satisfies both prongs.[1] We consider his contentions in turn.

Dorsainvil argues that his application contains the requisite "newly discovered evidence." This contention is plainly incorrect. Dorsainvil has not presented any "newly discovered" facts that would bear on his guilt. Instead he argues that the Bailey decision places established facts in a different light so that they are as consistent with innocence as they are with guilt.

We reject this creative interpretation of the plain language of § 2255(1). If, after the Bailey decision, the established facts would not have been sufficient to permit a reasonable fact finder to find that Dorsainvil was guilty of the use of a gun as proscribed by 18 U.S.C. § 924(c), it is only because Bailey changed the interpretation of "use" of a firearm by operation of law, not because of "newly discovered evidence." We view the first prong of the amended § 2255 as directed to certification of a successive petition based on a change in the underlying factual scenario, and conclude that Dorsainvil has alleged no such change.

It is the second and alternative prong of the amended § 2255 that is directed to certification based on a change in the legal scenario. Dorsainvil contends that Bailey established a "new rule of constitutional law." Five courts of appeals have already determined that Bailey did not establish a new rule of constitutional law, but simply interpreted a substantive criminal statute. See In re Vial,___ F.3d ___, 1997 WL 324385, at *3 (4th Cir. June 16, 1997); Coleman v. United States, 106 F.3d 339, 341 (10th Cir. 1997)(per curiam); United States v. Lorentsen, 106 F.3d 278, 279 (9th Cir. 1997); In re Blackshire, 98 F.3d 1293, 1294 (11th Cir. 1996)(per curiam); Nunez v. United States, 96

_____

1. Dorsainvil does not argue that the Act is inapplicable because it cannot be applied retroactively to second motions made after its effective date if the first motion was made before, see In re Vial, 1997 WL 324385, at *6-*7 (4th Cir. June 16, 1997) (Hall, J., dissenting), and hence we have no occasion to discuss the Supreme Court's opinion in Lindh v. Murphy, 1997 WL 338568, at *3 (U.S. June 23, 1997).

5

F.3d 990, 992 (7th Cir. 1996). Dorsainvil counters that where a successive petitioner claims that s/he has been convicted and punished for conduct that the law no longer makes criminal, the Due Process Clause is implicated, because "[i]ncarceration for acts that do not constitute a crime is patently offensive to the Constitution." Appellant's Brief at 16. Dorsainvil appears to conclude that therefore Bailey embodies an implicit rule of constitutional law.

Dorsainvil points to no legislative history to support such a reading, which would be contrary to the plain language of the statute. Under the statute, it is the "new rule" itself that must be one "of constitutional law," not the effect of failing to apply that rule to successive petitioners. Because we believe it is plain that Bailey is not a "new rule of constitutional law," we need not dwell on the fact that when the Supreme Court announced its interpretation of § 924(c)(1), it did not make it "retroactive to cases on collateral review." See Lorentsen, 106 F.3d at 279; Nunez, 96 F.3d at 992. The facts that the government has conceded that Bailey should be applied retroactively, see Appellee's Brief at 20, and courts have applied it retroactively on collateral review, see, e.g., United States v. Barnhardt, 93 F.3d 706, 709 (10th Cir. 1996), are consistent with viewing Bailey as a substantive statutory holding. Were it a constitutional rule, it would be subject to the presumption against the retroactive application of new rules of constitutional law as set forth in Teague v. Lane, 489 U.S. 288 (1989). See Barnhardt, 93 F.3d at 709.

We conclude, therefore, that Dorsainvil has failed to satisfy either prong of § 2255 as amended.

**B.**

Dorsainvil argues that if his claim that he has been convicted and imprisoned for conduct that is not criminal cannot be heard by the district court, then § 2255 as amended by the AEDPA is unconstitutional as a violation of the Due Process Clause of the Fifth Amendment or the Suspension Clause of Article I, section 9 of the Constitution. Were no other avenue of judicial review available for a party who claims that s/he is factually or

legally innocent as a result of a previously unavailable statutory interpretation, we would be faced with a thorny constitutional issue. Dorsainvil argues, however, that there are a number of other avenues for relief, and proffers in addition to the writ of habeas corpus available under 28 U.S.C. § 2241, the writ of error coram nobis, the writ of audita querela and Rule 60(b) of the Federal Rules of Civil Procedure. We need not consider the litany of potential alternatives, because we conclude that, under narrow circumstances, a petitioner in Dorsainvil's uncommon situation may resort to the writ of habeas corpus codified under 28 U.S.C. § 2241.

Section 2241 states that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district court and any circuit judge within their respective jurisdictions" to prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a),(c)(3). In Felker v. Turpin, 116 S.Ct. 2333 (1996), a case involving a state prisoner, the Supreme Court considered the extent to which the AEDPA circumscribed its own power to issue writs of habeas corpus. The Court held that although section 106(b)(3)(E) of the AEDPA, codified in 28 U.S.C. § 2244(b)(3)(E), precludes the Supreme Court from reviewing by appeal or petition for certiorari a judgment on an application for leave to file a second habeas petition in district court, the Act does not affect the Supreme Court's authority to hear habeas petitions filed as original matters in that Court. Id. at 2339. Reviewing the history of the predecessors of § 2241, the Court observed that in the 1996 Act Congress had not expressly referred to the Court's longstanding authority to entertain a petition for habeas corpus, and stated that "[r]epeals by implication are not favored." Id. at 2338. Thus, in Felker, as in its decision more than a century earlier in Ex parte Yerger, 8 Wall. 85, 19 L.Ed. 332 (1869), the Court specifically "declin[ed] to find a . . . repeal of § 2241 of Title 28 . . . by implication." Felker, 116 S.Ct. at 2339.2

_____

2. We note that in a recent decision, a district court held that the AEDPA provision barring judicial review of certain deportation orders did not repeal the habeas corpus jurisdiction that it has pursuant to § 2241, and in so holding it relied upon the same language quoted in the text. See Yesil v. Reno, 958 F. Supp. 828, 837 (S.D.N.Y. 1997).

7

Ever since 1948, when Congress enacted § 2255 to allow for collateral review of the sentences of federal prisoners in the trial court, that section, rather than § 2241, has been the usual avenue for federal prisoners seeking to challenge the legality of their confinement. The addition of § 2255 was deemed necessary because the judiciary was experiencing practical problems in light of the obligation for federal prisoners to file their § 2241 claims in the district where they were confined. This requirement meant that "the few District Courts in whose territorial jurisdiction major federal penal institutions are located were required to handle an inordinate number of habeas corpus actions far from the scene of the facts, the homes of the witnesses and the records of the sentencing court solely because of the fortuitous concentration of federal prisoners within the district." United States v. Hayman, 342 U.S. 205, 213–14 (1952).

With the enactment of § 2255, much of the collateral attack by federal prisoners has been routed to the jurisdiction of the trial court. Congress's interest in cabining those claims lays behind its enactment of Title I of the AEDPA. Significantly, however, the AEDPA did not amend the "safety-valve" clause in § 2255 that refers to the power of the federal courts to grant writs of habeas corpus pursuant to § 2241.

Indeed, § 2255, even following the recent amendment by the AEDPA, specifically allows recourse to original writs of habeas corpus, albeit in narrowly defined circumstances:

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255 (emphasis added).

In Hayman, decided shortly after the enactment of § 2255, the Court considered the effect of the new provision

8

on habeas corpus claims brought under § 2241. 342 U.S. at 206. Hayman, the petitioner, had filed a motion under § 2255 claiming ineffective assistance of counsel. The district court, after a hearing without notice to or the presence of Hayman, denied the motion. The court of appeals, questioning the adequacy and constitutionality of § 2255, directed that the motion be dismissed so that Hayman could proceed by a writ of habeas corpus under § 2241. In overturning that decision, the Supreme Court noted that because the district court ruling on a § 2255 motion could compel the production of the prisoner confined in another district, § 2255 was neither "inadequate nor ineffective." Id. at 222–23. At the same time, it confirmed the continued availability of the writ of habeas corpus, stating that "in a case where the Section 2255 procedure is shown to be `inadequate or ineffective,' the Section provides that the habeas corpus remedy shall remain open to afford the necessary hearing." Id. at 223. The Court concluded that "[u]nder such circumstances, [it need not] reach constitutional questions." Id.

The "inadequate or ineffective" language as a safety–valve was also emphasized by the Court in Swain v. Pressley, 430 U.S. 372 (1977), where the petitioner challenged the constitutionality of a provision of the District of Columbia Code that channeled prisoners' collateral attacks to the local Superior Court. The Supreme Court, relying on Hayman, rejected the contention that the substitution constituted a suspension of the Great Writ, stating: "The Court implicitly held in Hayman, as we hold in this case, that the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus." Id. at 381.

The government argues that a § 2255 motion is not "inadequate or ineffective" to test the legality of Dorsainvil's detention because those terms should be limited to situations where "practical considerations precluded a remedy in the sentencing court." Appellee's Brief at 24 (emphasis in original). Although it concedes that there is but sparse authority on the issue, it relies on legislative history showing that the momentum for § 2255 emanated

9

from the Judicial Conference of the United States which had recommended two bills, a "procedural bill" and a "jurisdictional bill," that were the precursors of § 2255. The "jurisdictional bill" would have expressly limited an application for writ of habeas corpus unless the prisoner showed that " `it appears that it has not been or will not be practicable to determine his rights to discharge from custody on [a § 2255 motion] because of his inability to be present at the hearing on such motion or for other reasons.' " Hayman, 342 U.S. at 216 n.23 (quoting H.R.4233 and S.1451, 79th Cong., 1st Sess. (jurisdictional bill)).

Congress did not adopt the language of the Conference's bill, and the statute as enacted contained the "inadequate or ineffective" clause without circumscribing it in the manner proposed in the Judicial Conference proposal. Nothing in § 2255 itself would limit resort to a § 2241 writ of habeas corpus in the manner suggested by the government. Although admittedly habeas corpus under § 2241 is now reserved for rare cases, the Court in Hayman stressed that in enacting § 2255 Congress did not intend "to impinge upon prisoners' rights of collateral attack upon their convictions," id. at 219, but solely "to minimize the difficulties encountered in habeas hearings by affording the same right in another and more convenient forum." Id.

It is noteworthy that when the Supreme Court in Swain turned to the issue of the adequacy of the new provision in the District of Columbia Code, which is virtually identical to § 2255, it did not limit its consideration to "practical considerations," as the government argues here, but inquired whether the availability of a collateral remedy before an Article I court was adequate to test the legality of the detention. Swain, 430 U.S. at 382–83. Although it rejected the challenge, the fact that the Court considered the merits of the adequacy issue when the challenge went beyond one limited to a practicality issue suggests a broader scope to the "inadequate or ineffective" language than the government's narrow interpretation proffered here. Indeed, we are hard put to understand precisely the type of situation which the government believes fits within the "inadequate or ineffective" language.

10

Dorsainvil argues that the safety-valve provision of § 2255 covers his situation because he seeks to challenge his conviction on a second § 2255 petition based on an intervening decision by the Supreme Court. A similar case "involv[ing] the availability of collateral relief from a federal criminal conviction based upon an intervening change in substantive law" came before the Supreme Court in Davis v. United States, 417 U.S. 333, 334 (1974). In that case, the Court stated that a Supreme Court decision interpreting a criminal statute that resulted in the imprisonment of one whose conduct was not prohibited by law "presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." Id. at 346 (internal quotations omitted). The Court held that "if [petitioner's] contention is well taken, then [his] conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under § 2255." Id. at 346-47 (internal quotations omitted); see also United States v. Addonizio, 442 U.S. 178, 186-87 (1979) (discussing Davis and observing that a refusal to have vacated his sentence "would surely have been a `complete miscarriage of justice,' since the conviction and sentence were no longer lawful").

The decision in Davis that § 2255 was broad enough to cover a defendant imprisoned for a crime that an intervening decision negates does not govern Dorsainvil's motion before us only because he has brought his claim for relief on a second § 2255 motion. In the earlier part of this opinion, we construed the AEDPA to preclude our certification of a second § 2255 motion that relied on the intervening decision in Bailey as a basis for certification. Thus, Dorsainvil does not have and, because of the circumstance that he was convicted for a violation of § 924(c)(1) before the Bailey decision, never had an opportunity to challenge his conviction as inconsistent with the Supreme Court's interpretation of § 924(c)(1). If, as the Supreme Court stated in Davis, it is a "complete miscarriage of justice" to punish a defendant for an act that the law does not make criminal, thereby warranting resort to the collateral remedy afforded by § 2255, it must follow

11

that it is the same "complete miscarriage of justice" when the AEDPA amendment to § 2255 makes that collateral remedy unavailable. In that unusual circumstance, the remedy afforded by § 2255 is "inadequate or ineffective to test the legality of [Dorsainvil's] detention."

There is no reason why § 2241 would not be available under these circumstances, provided of course that Dorsainvil could make the showing necessary to invoke habeas relief, an issue for the district court. The coverage of the two provisions is not dissimilar. Indeed, in Davis the Court stated "[t]hat history makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis, 417 U.S. at 343; see also United States v. Anselmi, 207 F.2d 312, 314 (3d Cir. 1953) ("[S]ection 2255 . . . afford[s] to a convicted federal prisoner a remedy which is the substantial equivalent of the conventional writ of habeas corpus.") (emphasis added).

We do not suggest that § 2255 would be "inadequate or ineffective" so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255. However, allowing someone in Dorsainvil's unusual position – that of a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate, even when the government concedes that such a change should be applied retroactively – is hardly likely to undermine the gatekeeping provisions of § 2255.

Nothing in our holding in this case represents a deviation from our prior precedent strictly construing the applicability of the safety-valve language in § 2255. See Application of Galante, 437 F.2d 1164, 1165–66 (3d Cir. 1971) (per curiam) (unfavorable legal standards prevailing in circuit where sentencing court located does not render § 2255 remedy "inadequate or ineffective"); Litterio v. Parker, 369 F.2d 395, 396 (3d Cir. 1966) (per curiam) (sentencing court's prior denial of identical claims does not render § 2255 remedy "inadequate or ineffective"); Mucherino v. Blackwell, 340 F.2d 94, 95 (3d Cir. 1965) (per curiam)

12

(same); <u>Crismond v. Blackwell</u>, 333 F.2d 374, 377 & n.6 (3d Cir. 1964) (neither 2,000 mile distance between sentencing court and district of confinement, nor denial of relief by sentencing court, nor denial of leave to appeal from sentencing court in forma pauperis, render § 2255 remedy "inadequate or ineffective," nor do any "unusual circumstances" exist); <u>United States ex rel. Leguillou v. Davis</u>, 212 F.2d 681, 684 (3d Cir. 1954) (remedy by § 2255 motion not "inadequate or ineffective" if district court "could have entertained the prisoner's claim, inquired fully into the facts and granted the very relief the prisoner is seeking"); <u>see also Bradshaw v. Story</u>, 86 F.3d 164, 166 (10th Cir. 1996) (denial of prior § 2255 motion does not show that § 2255 is an inadequate remedy).

The government has not suggested that Dorsainvil has abused the writ, the principal situation that the AEDPA was intended to eliminate and for which the Court in <u>Felker</u> chose to be "inform[ed]" by the gatekeeping provisions of § 2255. 116 S. Ct. at 2339. He is in an unusual situation because <u>Bailey</u> was not yet decided at the time of his first § 2255 motion. Our holding that in this circumstance § 2255 is inadequate or ineffective is therefore a narrow one. In the posture of the case before us, we need go no further to consider the other situations, if any, in which the "inadequate or ineffective" language of section 2255 may be applicable.

**C.**

The question before us is not whether Dorsainvil is actually innocent of violating § 924(c)(1), but rather, as in <u>Davis</u>, 417 U.S. at 347, whether his claim that he is being detained for conduct that has subsequently been rendered non-criminal by an intervening Supreme Court decision is cognizable in a district court. The government does not argue that Dorsainvil "used" a firearm within the meaning of § 924(c)(1), but instead argues that Dorsainvil was "carrying" a firearm within the meaning of§ 924(c)(1), and therefore cannot present himself as "actually innocent." There may be some force in the government's argument, which has convinced our concurring colleague. Judge Stapleton relies for precedent on this court's recent decision

13

in <u>United States v. Eyer</u>, 113 F.3d 470 (3d Cir. 1997), where we held that the defendant, who had a firearm in an automobile in a position similar to that of Dorsainvil, was guilty under the "carries" language of § 924(c)(1) penalizing anyone who "during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm." However, in <u>Eyer</u>, unlike this case, the facts showed that the handgun "was conveyed with the cocaine to the purchaser's apartment," <u>id.</u> at 476, which patentlyfits the definition of

carrying. Dorsainvil argues that "transportation" of a firearm is not the same as "carrying" it for purposes of this statute. Moreover, Dorsainvil may argue that the jury was not fully charged on the "carry" aspect to § 924(c)(1), and we have found that "carry" appears to have been referred to only summarily in the district court's instructions.

We offer no opinion on these issues. Unlike our concurring colleague, we believe they are best presented to a district court as that court can view the full record of the evidence presented, the arguments made at trial, and the charge. It is sufficient for our purposes in declining to reach the constitutional issue raised by Dorsainvil that we have concluded that resort to § 2241 is still available in an appropriate case, and that Dorsainvil's claim is not so devoid of merit that it should be foreclosed by us at this stage. The AEDPA has channeled § 2241 petitions to the district courts in the first instance. No district court has had the opportunity to consider whether, following Bailey, Dorsainvil's conduct falls within § 924(c)(1). We cannot conclude that Dorsainvil has failed to present at least a sufficiently colorable claim based on Bailey for review under § 2241.

**III.**

**CONCLUSION**

We adhere to our prior order denying Dorsainvil's motion for certification to file a second petition pursuant to § 2255. Our denial is without prejudice to Dorsainvil's right to file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in a district court in the district of his confinement.

STAPLETON, <u>Circuit Judge</u>, Concurring:

As I read the opinion of the court, my colleagues and I agree on the following propositions:

1. Dorsainvil has failed to meet the gatekeeping criteria of the AEDPA applicable to successive petitions under § 2255.

2. Section 2255 is not "inadequate or ineffective to test the legality of detention" merely because access to a federal court under that section is barred by the gatekeeping provisions. The availability of relief by way of an initial petition means that § 2255 is normally adequate and effective for this purpose even though a successive petition would be barred by the gatekeeping provisions.

3. Section 2255 is "inadequate or ineffective to test the legality of detention" in a case where the gatekeeping provisions bar a successive petitioner who can allege actual innocence of the crime of which he was convicted and who, at the time of his earlier petition(s), could not demonstrate that innocence. Accordingly, § 2255 is "inadequate or ineffective" in a situation in which a successive petitioner can allege both that the Supreme Court, since his last petition, has interpreted the statute under which he was convicted in a new way and that his conduct was lawful under the statute as subsequently interpreted.

4. Although the gatekeeping provisions applicable to successive § 2255 petitions must "inform" a court in determining whether to entertain a petition under§ 2241, <u>cf. Felker v. Turpin</u>, ___ U.S. ___, 116 S. Ct. 2333 (1996) (so holding with respect to the gatekeeping provisions applicable to successive § 2254 petitions), a court can entertain a § 2241 petition where a successive petitioner can allege both that the Supreme Court, since his last petition, has interpreted the statute under which he was convicted in a new way and that his conduct was lawful under the statute as so interpreted.

5. Denial of Dorsainvil's application for permission to file a successive § 2255 petition because he has failed to satisfy the gatekeeping provisions does not violate the Due Process Clause or the Suspension of the Writ Clause.

15

As I read the court's opinion, my colleagues and I do differ on whether it may be possible in this particular case for Dorsainvil to gain access to a federal court under § 2241. They suggest that a district court, after viewing "the full record of the evidence presented, the arguments made at trial, and the charge" (Slip Op. at 14), might properly decide to entertain a § 2241 petition despite the fact that Dorsainvil has not satisfied the gatekeeping provisions of the AEDPA applicable to successive § 2255 petitions. I disagree because it is clear from the record in this case that Dorsainvil cannot allege facts which will support his claim of actual innocence, and therefore the unavailability of relief under § 2255 does not render that provision inadequate or ineffective as to him.

Dorsainvil was indicted for "knowingly us[ing] and carry[ing] ... a firearm during and in relation to ... drug trafficking crimes." Superseding Indictment, Count III., App. at 36–37. In accordance with the indictment, the court charged the jury on "using <u>or</u> carrying afirearm during and in relation to a drug trafficking crime." Tr. at 9 (emphasis added).1 The undisputed facts from Dorsainvil's trial and the jury's finding that he used or carried a gun "during and in relation to a drug trafficking crime" make it impossible for him to allege that his conduct was not prohibited by the statute he was convicted of violating.

The uncontradicted record establishes that Dorsainvil drove the truck, that he was apprehended in the driver's seat with cocaine in his pants, that there was a loaded gun with a live round in the chamber in an open paper bag also containing his wallet and personal papers, that the bag was located between the front seats within his reach, and that the firearm was purchased by and registered to him. Dorsainvil did not contest these facts at trial. Nor did he contest the fact that he had placed the gun in the truck. He

_____

1. At oral argument Dorsainvil's counsel questioned the adequacy of the charge on "carrying," pointing out that more emphasis was placed on "using." Dorsainvil did not object at trial to the charge on this ground. More importantly, he cannot succeed at this stage in the game merely by pointing to a deficiency in a jury instruction. He must allege facts that affirmatively demonstrate innocence. This he cannot do.

16

denied only that the gun's presence bore any relation to the drug transaction. Based on facts that Dorsainvil does not now dispute, and after being fully instructed on the "in relation to" element of the offense charged, the jury found Dorsainvil guilty as charged.

While Dorsainvil stresses that the trial court gave a more expansive definition of "use" than would be warranted after Bailey, he ignores the fact that he "carried" the gun in relation to the drug transaction, even if he did not also "use" it in relation to that transaction. Indeed, on virtually the same facts, this court has held that the defendant "carried" a gun in relation to a drug offense. United States v. Eyer, 113 F.3d 470 (3d Cir. 1997). Despite the court's suggestion to the contrary, there is no legally relevant distinction between Dorsainvil's case and Eyer.

Police arrested the defendant in Eyer while he was making a delivery of cocaine and seized his automobile. They discovered "a fully loaded Colt .380 caliber semi-automatic hand gun with a live round in its chamber located in the console between its front seats along with some cocaine." Id. at 471. After defendant-Eyer's § 924(c)(1) conviction at a bench trial, he filed a § 2255 petition predicated on the decision in Bailey. He asserted that he was tried "based on the expansive definition of `use' set forth in United States v. Theodoropoulus, 866 F.2d 587 (3d Cir. 1989), which held that a firearm was `used' if it was available for possible use during the drug transaction." Eyer, 113 F.3d at 475. Eyer also insisted that the facts in his case could not justify a conviction under the carry prong. The district court rejected both arguments and we affirmed. With respect to Eyer's insistence that he did not "carry" the gun, we held:

[T]he facts here compel the conclusion that Eyer was carrying the firearm.... [T]he handgun was loaded and was in a console between the two front seats, and was conveyed with the cocaine to the purchaser's apartment. Eyer's easy access to the handgun and its transportation convinces us that he was carrying it.

Id. at 476 (emphasis added). Dorsainvil, too, had easy access to a gun while he transported it during and in

17

relation to a drug offense, and these facts compel the conclusion that Dorsainvil "carried" the gun.

In short, this is not a case in which the petitioner alleges facts that demonstrate actual innocence, and no miscarriage of justice will result from denial of the § 2255 certification. Accordingly, alternative access to a federal court under § 2241 is not necessary to the constitutionality of § 2255, and I would not suggest that such access might be available.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

18