**J.T. HAUN, Petitioner–Appellant,**

v.

**Jose BARRON, Jr., Warden,
Respondent–Appellee.**

No. 03–5091.

United States Court of Appeals,
Sixth Circuit.

July 14, 2004.

Rehearing En Banc Denied Oct. 18, 2004.

Cheryl J. Sturm, Chadds Ford, PA, for Petitioner–Appellant.

David P. Grise, Asst. U.S. Attorney, Mason Moore Kessinger, Asst. U.S. Attorney, U.S. Attorney's Office, Lexington, KY, for Respondent–Appellee.

Before DAUGHTREY and CLAY, Circuit Judges; and MCCALLA, District Judge.*

CLAY, Circuit Judge.

Petitioner, J.T. Haun, appeals from the order issued by the United States District Court for the Eastern District of Kentucky, entered on December 5, 2002, dismissing Petitioner's request for habeas relief, pursuant to 28 U.S.C. § 2241. For the reasons set forth below, we AFFIRM.

---

* The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

## BACKGROUND

### Procedural History

In 1995, Petitioner was convicted by a federal jury "on five counts of money laundering under 18 U.S.C. § 1956, five counts of mail fraud in violation of 18 U.S.C. § 1341, and one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 371." *United States v. Haun,* 90 F.3d 1096, 1099 (6th Cir.1996). Petitioner was sentenced to 135 months in prison.[1]

Petitioner made numerous arguments on appeal: that there was insufficient evidence; that the money laundering statute was unconstitutionally void for vagueness; that the district court erred in admitting certain deposition testimony; and Petitioner challenged the calculation of the offense level at sentencing. 90 F.3d at 1098. This Court affirmed the conviction and sentence, in *United States v. Haun,* 90 F.3d 1096 (6th Cir.1996).

On June 23, 1999, Petitioner filed a *pro se* motion, under 28 U.S.C. § 2255, alleging ineffective assistance of counsel. The district court dismissed this motion as time-barred, and, in a May 10, 2000 order, this Court affirmed.

Petitioner next filed a *pro se* petition, under 28 U.S.C. § 2241, seeking relief based on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This action was transferred to this Court as a second or successive habeas motion (under 28 U.S.C. §§ 2244(b)(2), 2255), and this Court denied the petition on October 31, 2001.

Proceedings in connection with the present petition then commenced. Petitioner sought an order from this Court, pursuant to 28 U.S.C. § 2244, authorizing the district court to consider a successive motion to vacate the sentence, under 28 U.S.C. § 2255, due to the Supreme Court's decision in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In *Neder,* the Supreme Court ruled that materiality is an element of federal mail fraud, wire fraud, and bank fraud statutes and that the issue of materiality must be submitted to the jury. This Court declined to grant leave on the grounds requested because *Neder* did not announce a new rule of constitutional law. However, this Court ruled that Petitioner was claiming to be "actually innocent" under 28 U.S.C. § 2241. This Court cited *In re Dorsainvil,* 119 F.3d 245 (3d Cir.1997), which denied the petitioner's motion to file a second 28 U.S.C. § 2255 petition but allowed claims under 28 U.S.C. § 2241, after the Supreme Court had announced a clarification of a federal criminal statute in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Based on *Dorsainvil,* this Court on May 15, 2002 ruled that Petitioner did not require permission to file a 28 U.S.C. § 2241 application based on "actual innocence."

On July 15, 2002, Petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. On December 5, 2002, the district court entered a Memorandum Opinion and Order, dismissing the petition, *sua sponte,* pursuant to 28 U.S.C. § 1915(e)(2), for failure to state a claim upon which relief can be granted.

On January 2, 2003, Petitioner filed a timely notice of appeal. In a letter, Respondent subsequently advised by letter that it would not file a brief.

---

1. A significant portion of the procedural history relating to this case is not set forth in the docket sheet or in documents in the Joint Appendix. Rather, it is gleaned from Petitioner's Brief, the district court's opinion, and a prior decision from this Court. Nonetheless, we rely on this account of the procedural history because it is unchallenged—inasmuch as Respondent has filed no brief.

## Substantive Facts

The substantive facts were explained in this Court's prior opinion in this case:

In late 1989, defendant, the operator of Auto World, a Tennessee car dealership, began purchasing automobiles from Ron Germadnik, an Ohio car dealer. Germadnik purchased used Chevrolet Caprices at auctions specializing in wrecked and theft-recovered vehicles. Germadnik separated the cars' bodies from their chassis and replaced the old bodies with new ones. Once rebuilt, the cars looked like new and the odometers reflected low mileages. These cars were titled in Ohio and the "self-assembled" notation on the title's "previous owner" line indicated that the cars had been rebuilt. During 1989 and 1990, Germadnik sold a number of rebuilt Caprices to Auto World. Germadnik told defendant how the Caprices were constructed and provided defendant with true information regarding the chassis' years and mileages.

Defendant and his salesmen Stanford Sharp and Ray Lewis subsequently sold these cars without disclosing to buyers that they were reassembled and that the chassis had mileages far in excess of the body mileages that were reflected on the odometers. Buyers typically paid Auto World a fee to obtain a Tennessee title for them. The Tennessee titles, however, did not bear the "self-assembled" notation so buyers could not learn from the titles that these cars had been rebuilt. When one buyer wanted to obtain a Tennessee title on his own, defendant instructed Greg Goins, a car buyer for Auto World, to obtain an Ohio title that did not have the "self-assembled" disclosure. Goins then asked Gary Burkeen, a used car wholesaler doing business as Eighty–Eight Fleet, Inc., to "flip" that title for him. To satisfy that request,

Goins supplied Burkeen with paperwork that showed that ownership of that vehicle was transferred from Auto World to Eighty–Eight Fleet, Inc. Although that transfer never occurred, the new Ohio title reflected "Auto World" rather than "self-assembled" as the previous owner.

*Haun,* 90 F.3d at 1098.

## DISCUSSION

The district court dismissed the petition, which was filed under 28 U.S.C. § 2241, as failing to state a claim upon which relief can be granted. This legal conclusion is reviewed *de novo. Hill v. Morrison,* 349 F.3d 1089, 1091 (8th Cir.2003) ("This court renders *de novo* review of a district court judgment dismissing a habeas corpus petition filed under § 2241.") (citations omitted). *Jeffers v. Chandler,* 253 F.3d 827, 830 (5th Cir.2001) ("Because he is proceeding under § 2241, Jeffers need not obtain a COA. In an appeal from the denial of habeas relief, this court reviews a district court's findings of fact for clear error and issues of law *de novo.* ") (citations omitted).

■ Petitioner's sole claim is that the district court erred in denying habeas relief based upon the Supreme Court's new interpretation of the federal mail fraud statute, as announced in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Before proceeding, it should be noted that if Petitioner's argument has merit, Petitioner's convictions on five counts of money laundering under 18 U.S.C. § 1956 would still stand—the interpretation of the statute is not altered by *Neder,* because the statute does not use the term "scheme or artifice to defraud." Petitioner's challenge applies only to the convictions for five counts of mail fraud, in violation of 18 U.S.C. § 1341 (a statute that was analyzed in *Neder* ), and one count of conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371.

The district court ruled that Petitioner failed to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii) (the district court "shall" dismiss a habeas petition, *sua sponte*, at any time, if the petition "fails to state a claim on which relief may be granted."). The district court attempted to dispose of Petitioner's argument by stating that 28 U.S.C. § 2241 can only be used to challenge the execution of a sentence or to state a claim of "actual innocence." According to the district court, neither of these purposes was implicated in the present case. Here, the district court failed to analyze the reasoning set forth by this Court's May 15, 2002 order. In that order, this Court explained that Petitioner's case may be analogous to *In re Dorsainvil*, 119 F.3d 245 (3d Cir.1997). Further analysis of *Dorsainvil* is needed.

In *Dorsainvil*, the petitioner was granted the opportunity to use § 2241 to challenge a federal conviction, after the Supreme Court in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) clarified the meaning of a federal criminal statute. *Bailey* made clear that under 18 U.S.C. § 924(c)(1), the language describing a person who "during and in relation to any ... drug trafficking crime ... uses or carries a firearm," applies only to a defendant who "actively employed the firearm during and in relation to the predicate crime." *Dorsainvil*, 119 F.3d at 247 (citing *Bailey*, 116 S.Ct. at 509). In *Dorsainvil*, the Third Circuit ruled that its denial of a motion for certification to file a second § 2255 petition was without prejudice to the right to file a § 2241 petition. 119 F.3d at 251. The court explained that ordinarily § 2241 cannot be used to circumvent the mechanisms whereby § 2255 limits the filing of successive habeas convictions; but the court stated that special circumstances existed in light of the petitioner's reliance on the new rule of statutory interpretation announced in *Bailey*. As the court stated:

> We do not suggest that § 2255 would be "inadequate or ineffective" so as to enable a second petitioner to invoke § 2241 merely because that petitioner is unable to meet the stringent gatekeeping requirements of the amended § 2255. Such a holding would effectively eviscerate Congress's intent in amending § 2255. However, allowing someone in Dorsainvil's unusual position—that of a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate, even when the government concedes that such a change should be applied retroactively—is hardly likely to undermine the gatekeeping provisions of § 2255.

*Id.* at 251 (emphasis added).[2]

The present case would be analogous to *Dorsainvil*, if Petitioner has not had an earlier opportunity to challenge a conviction which may be negated by an intervening change in substantive law. *Neder v. United States* clarified that the term "scheme or artifice to defraud," as used in the federal mail fraud (18 U.S.C. § 1341), wire fraud (§ 1343), and bank fraud (§ 1344) statutes, includes a materiality element. 527 U.S. 1, 21–25, 119 S.Ct.

---

**2.** Changes in substantive criminal law apply retroactively. As stated in *Callanan v. United States*, 881 F.2d 229, 231–32 (6th Cir.1989), The case at bar involves not a new rule of criminal procedure, but a new interpretation of the substantive criminal law. In this the present case resembles *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), a decision indicating that where the intervening change of law is such that the defendant was punished "for an act that the law does not make criminal," the new rule of law must be applied retroactively in postconviction proceedings. (citations omitted).

1827, 144 L.Ed.2d 35 (1999). If *Neder* presents a change in applicable substantive criminal law, then the present case is indistinguishable from *Dorsainvil.* Petitioner would raise the possibility that *Neder* has negated the mail fraud convictions; this would be analogous to the situation in *Dorsainvil.*

Assuming for the sake of argument that *Neder* offers a substantive change in criminal law that could negate Petitioner's conviction, then the district court's reference to a distinction between "actual innocence" and "legal innocence" fails to distinguish the present case from *Dorsainvil.* The nature of Petitioner's claim of innocence would be indistinguishable from that in *Dorsainvil,* where the petitioner's possession of a firearm would not violate the applicable drug trafficking statute, if the firearm was not actively employed during the commission of the drug offense. Because the nature of the claim of innocence in the present case would be indistinguishable from that in *Dorsainvil,* it follows that either both cases involve "actual innocence" or neither case does.[3] Regardless of whether the term "actual innocence" applies to both cases or to neither case, there is no basis for holding that § 2241 would be applicable in *Dorsainvil* but not in the present case. No reason has been presented by Respondent or by the district court, nor is any reason apparent to this Court, for not following the Third Circuit's ruling in *Dorsainvil.* As a result, based on *Dorsainvil,* there would be no procedural bar to Petitioner's seeking relief under § 2241.

The question, then, is whether (like *Bailey* ) *Neder* presents "an intervening change in substantive law [that] may negate" Petitioner's convictions. *Dorsainvil,* 119 F.3d at 251. As explained, *Bailey* held that, under 18 U.S.C. § 924(c)(1), a firearm had to be "actively employed," to sustain a conviction. In reaching this conclusion, the Supreme Court undertook a detailed analysis of the statute, examining the statute's language and legislative history. *Bailey,* 516 U.S. at 145–51, 116 S.Ct. 501. This analysis effectuated "an intervening change in substantive law." *Dorsainvil,* 119 F.3d at 251.

In *Neder,* the Supreme Court held that the phrase "scheme or artifice to defraud" included a materiality element. In reaching this conclusion, the Court stated, "[i]t is a well-established rule of construction that where Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Id.* at 21, 119 S.Ct. 1827 (citations and internal quotation marks omitted). Petitioner argues that by generally adopting the common law meaning of the term "scheme or artifice to

---

**3.** The term "actual innocence" would be applied to both cases, in this Circuit, although the Third Circuit would not use this phrase for either case. As stated in *Charles v. Chandler,* 180 F.3d 753, 757 (6th Cir.1999),

> The Court [in *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)] held that "actual innocence," which "means factual innocence, not mere legal insufficiency," could be demonstrated on remand by the petitioner upon showing that "that he did not 'use' a firearm as that term is defined in *Bailey." Id.* at 1611–12.

*Cf. Dorsainvil,* 119 F.3d at 252 ("The question before us is not whether Dorsainvil is actually innocent of violating § 924(c)(1), but rather, as in *Davis [v. United States* ], 417 U.S. [333,] 347, 94 S.Ct. 2298, 41 L.Ed.2d 109 [ (1974) ], whether his claim that he is being detained for conduct that has subsequently been rendered non-criminal by an intervening Supreme Court decision is cognizable in a district court.").

defraud," *Neder* incorporates into the statute the common law rule that non-disclosure is not fraudulent, absent a duty to disclose. *Chiarella v. United States,* 445 U.S. 222, 227–28, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980) ("At common law, misrepresentation made for the purpose of inducing reliance upon the false statement is fraudulent. But one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to do so."). Based on trial testimony, Petitioner asserts that the sole theory of fraud liability at trial was based upon non-disclosure. Under Petitioner's theory, there would not have been any violation of the mail fraud statute, if there was no duty to disclose the fact that the cars had been reassembled and that the odometer readings were misleading.

Nonetheless, in the present case, *Neder* is not analogous to *Bailey.* Under *Dorsainvil,* a petition under § 2241 would only be allowed if, after the conviction, there was a change in substantive law that might negate the conviction. Arguably, *Neder* effectuated a change in substantive law by including a materiality element—meaning that if Petitioner challenged the materiality finding, then the petition might be proper, here. But materiality is not relevant to Petitioner's theory—rather, Petitioner relies on *Neder*'s statement that the phrase "scheme or artifice to defraud" is governed by its common-law meaning. Petitioner argues that under the common law meaning, non-disclosure is not fraudulent, absent a duty to disclose. However, *Neder*'s application of the common law meaning of the phrase did not effectuate a change in substantive law in the same manner as *Bailey* did. In *Neder,* the statutory interpretation was not based upon a detailed analysis of a given criminal statute (as had been the case in *Bailey*); rather, the Supreme Court simply relied on "a well-es-

tablished rule of construction that where Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." 527 U.S. at 21, 119 S.Ct. 1827. That the rule was "well-established" shows that there was no substantive change in the criminal law.

At most, *Neder* changed substantive law in specifically holding that there was a materiality element under the statute—arguably, this was not a change in substantive law, because it was based upon "well-established" principles of statutory construction. Beyond the possible change in law regarding materiality, *Neder* did not change any substantive law. *Neder* adopted the common law meaning of the phrase "scheme or artifice to defraud," only in the context of deciding whether or not there was a materiality element. It may be that, contrary to the common law, the statute does not require a duty to disclose, for an action based upon non-disclosure, since, perhaps "the statute otherwise dictates." *Id.* Overall, then, *Neder* did not deal with the issue of whether there must be a duty to disclose, for there to be fraud based upon non-disclosure: *Neder* never specifically required a duty to disclose, for there to be an action for fraud based upon non-disclosure; and, if a duty to disclose is required, for there to be fraud based upon non-disclosure, then that requirement was based upon principles of statutory construction that pre-existed *Neder.* As a result, the present case is not analogous to *Dorsainvil.*

■ Petitioner's argument that there was error in the jury instructions (in the omission of a duty to disclose) fails, because Petitioner did not preserve this issue for appeal. Petitioner did not object to

the jury instructions on the basis of failure to include a duty to disclose. As mentioned, if there was error in the omission of a duty to disclose, then Petitioner could have discerned this error at the time of the trial. The same reasoning applies to Petitioner's argument that the indictment improperly failed to make mention of a duty to disclose. *Neder* did not effectuate a substantive change in criminal law that could provide the basis for negating any of Petitioner's convictions.

## CONCLUSION

For the aforementioned reasons, we AFFIRM the judgment of the district court.