Sanford POLLACK, Petitioner,

v.

Dan HOBBS, Warden, Jesup Prison Camp, Respondant.

No. 99CV7469(RR).

United States District Court, E.D. New York.

April 27, 2000.

Sanford Pollack, Jesup, GA, petitioner pro se.

Honorable Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, New York, by Jo–Anne Weissbart, Assistant United States Attorney, for respondent.

## MEMORANDUM AND ORDER

RAGGI, District Judge.

For almost forty years, Sanford Pollack maintained an active labor law practice with clients throughout the United States. In 1997, he was convicted before this court after pleading guilty to arson, 18 U.S.C. § 844(i), two counts of conspiracy to receive kickbacks, 18 U.S.C. § 371, and mail fraud, 18 U.S.C. § 1341. *See United States v. Pollack,* 96 CR 377(RR). On April 18, 1997, this court sentenced Pollack to concurrent prison terms of 71 months for the arson and 60 months on the conspiracy and mail fraud charges. This sentence was to run consecutively to a 12–month term for embezzlement imposed earlier by Judge Joanna Seybert. *See United States v. Pollack,* 94 CR 462(JS). This court imposed no fine, but it did order restitution in the amount of $371,400 to the insurance company that paid Pollack for damages caused by the arson, and $9,150,000 to a union pension fund for losses

occasioned by one of defendant's kickback schemes.[1]

Proceeding pro se, Pollack now asks this court to vacate his arson conviction pursuant to 28 U.S.C. § 2241 for lack of federal jurisdiction. Specifically, he asserts that there was no interstate commerce nexus to the crime. The government opposes the motion both on procedural grounds and on the merits. This court agrees with both arguments and hereby denies the petition.

### Factual Background

Although Pollack challenges this court's jurisdiction over the charged arson, he does not dispute his culpability for this or any of the other crimes of conviction. Accordingly, this court will summarize the facts briefly.

### 1. The Arson

On March 24, 1992, Sanford Pollack arranged for a vacation home in West Palm Beach, Florida to be destroyed by fire. This home, which Pollack and his wife used for a few months each year,[2] was owned 80% by petitioner and 20% by J.E.L. Leasing, a subchapter S corporation wholly owned by petitioner. Pollack had insured the home for its replacement value and, after the fire, he filed a false claim for $1.37 million. He later modified his demand to $600,000 and eventually settled for $295,000.

### 2. The Kickback Schemes

#### a. The 1990 Prudential Security Kickbacks

In 1990, Pollack served as counsel to Local 875 of the International Brotherhood of Teamsters. In the summer of that year, he agreed with various individuals to use his influence with the trustees of the union pension fund to have them deposit

---

1. As the docket sheet in Pollack's criminal case reveals, petitioner and the United States subsequently became embroiled in considerable litigation in this and other courts regarding his transfer of assets to family members to avoid making restitution. The court will not detail these proceedings in this memorandum.

2. The Pollacks' permanent residence was in Baldwin, New York.

$30 million at Prudential Securities. In return, Pollack and his confederates received a quarterly kickback of $8,000–10,-000 over a three and one-half year period.

### b. *The 1993 Bear Stearns Kickbacks*

In late 1993, Pollack entered into another scheme to influence the trustees to transfer $9.3 million in pension funds from Prudential Securities to Bear Stearns by misrepresenting the high-risk nature of an overseas investment. Here again, Pollack expected to receive a generous kickback for his efforts, but this never materialized since the union monies disappeared almost as soon as they left the United States.

### 3. *The Mail Fraud Scheme*

In the summer of 1990, Pollack agreed to help two unionized companies avoid benefit payments for certain workers by listing them as employees of fraudulent corporations. To help effect the scheme, Pollack delivered various payroll forms and checks to his confederates by mail. In this manner, approximately $6.7 million in payroll funds were fraudulently diverted over approximately four years. Pollack and his two confederates split a weekly payment of $1,000 for their efforts.

### 4. *Procedural History*

#### a. *Pretrial Challenge to Jurisdiction*

Prior to pleading guilty, Pollack, through retained counsel, filed a number of pretrial motions. Among these was a motion to dismiss the arson charge for lack of federal jurisdiction, in short, the same legal challenge raised in this § 2241 petition. This court denied the motion to dismiss, finding that there were disputed issues of fact about the commercial use of the property that would have to be resolved at trial:

> There are some disputed facts between the parties as to how the property was used, how it was dealt with in terms of taxes. . . . Why shouldn't this matter go to trial and be renewed as an application

at the close of the government's case, if I don't hear evidence on some of the materials that the government is proffering?

> . . . I understand that this is not *Russell [v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) ] in that it's not property being [rented] to third persons. On the other hand, I'm not so sanguine [as the defense] that it can be viewed pure and simple as residential property. The government has proffered a version of events that appears to be supported by some evidence that this property is really an important link in a commercial chain that may have involved Mr. Pollack's law practice, that may have involved the way in which he was paid for his law practice.

Transcript, Aug. 9, 1996, at 26–27.

#### b. *Guilty Plea*

On February 5, 1997, Pollack waived his right to have a jury determine disputed issues of fact in his case, including those relating to jurisdiction. Instead, he pleaded guilty pursuant to an agreement with the government that provided for a 71–month term of incarceration. *See* Plea Agreement, Feb. 5, 1997; Fed.R.Crim.Pro. 11(e)(1)(C). Pursuant to paragraph four of the agreement, Pollack waived his right to appeal any sentence that was 71 months or less.

In allocuting to the arson count, Pollack stated under oath that "between May 1989 and March 24th, 1992, from the [E]astern [D]istrict of New York, I aided and abetted another to set fire to my home in West Palm Beach, Florida, *which was used in interstate commerce.*" Transcript, Feb. 5, 1997, at 36 (emphasis added). The court understood the highlighted admission, made by an experienced lawyer, to concede the interstate commerce element that he had previously challenged. Nevertheless, in an abundance of caution, it asked Pollack briefly to explain how the property was used in interstate commerce. Petitioner replied: "The property was owned

20% by a subchapter S corporation which I owned, JEL Corporation. That corporation was a New York corporation. It owned property in Florida and it paid many of the bills on the Florida property." *Id.* at 37. To ensure that it understood Pollack, the court asked, "[s]o even though you and your wife were using this as residential property, you did use this business as a vehicle for conducting [m]any various tax and other business transactions related to the property?" Pollack stated, "Yes, Your Honor." He further volunteered that "on occasion when I was at that property, I did in fact use the phone in connection with my labor practice." *Id.*

### c. *Section 2241 Petition*

Pollack did not challenge this court's jurisdiction over the arson charge on April 18, 1997, when he appeared before the court for sentencing. Neither did he raise this point on direct appeal nor in a timely request for collateral relief under 28 U.S.C. § 2255. Instead, Pollack waited over two years, until October 28, 1999, to petition this court for relief pursuant to 28 U.S.C. § 2241.

### *Discussion*

### I.  *The Availability of § 2241 Relief*

■ Title 28 U.S.C. § 2241 permits federal courts to entertain habeas corpus petitions from federal prisoners "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). As a rule, however, a prisoner who fails to raise an issue on direct appeal cannot subsequently pursue it in a habeas corpus petition unless he shows both good cause to excuse his default and ensuing prejudice or, in the alternative, a fundamental miscarriage of justice. *See Underwood v. United States,* 166 F.3d 84, 87 (2d Cir.1999); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993); *Campino v. United States,* 968 F.2d 187, 189–

90 (2d Cir.1992). Even where this procedural hurdle can be cleared, habeas corpus relief will not be awarded under § 2241 unless a prisoner can show that a habeas petition under § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255. In this case, Pollack cannot satisfactorily explain his failure to raise his jurisdictional challenge either on direct appeal or in a timely § 2255 motion. Accordingly, this court will not hear his claim under § 2241.

■. As "cause" for his appellate default, Pollack cites the provision in his plea agreement whereby he waived the right to appeal a sentence of 71–months or less. *See* Plea Agreement ¶ 4; Transcript, Feb. 5, 1997, at 32. Having received the benefit of his Rule 11(e)(1)(C) bargain, Pollack is hardly in a position to cite an advantageous "agreement" under which he promised not to appeal his conviction as an excuse for procedural default, particularly on a claim of which he was well aware before he pleaded guilty.

The Second Circuit has expressly rejected the argument that prisoners who enter into plea bargains waiving direct appeal can then pursue collateral challenges to their convictions. In *United States v. Pipitone,* 67 F.3d 34, 39 (2d Cir.1995), the court explained that whatever "linguistic distinction" can be made between a direct appeal and a habeas corpus petition, it was "loathe to countenance so obvious a circumvention of a plea agreement."[3] *Accord Defex v. United States,* 1998 WL 812572, at *2 (E.D.N.Y. May 19, 1998) (JG) (defendant who expressly waives appellate review of sentence cannot raise challenge under § 2255).

■ Assuming arguendo that Pollack's plea agreement could excuse his failure to raise his jurisdictional challenge on direct appeal, that would still not explain his

---

**3.** In *United States v. Yemitan,* 70 F.3d .746, 748 (2d Cir.1995), the Court of Appeals noted that a waiver of appellate rights might not be enforced if it could be shown that a sentence

was so "arbitrary" as to "amount to an abdication of judicial responsibility," or if the sentence was tainted by invidious bias. Pollack makes no such claims in this case.

failure to file a timely § 2255 claim. Recent amendments to § 2255, made pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), establish a one-year limitations period for filing habeas corpus petitions, which in Pollack's case would run from "the date on which the judgment of conviction becomes final." Pollack was sentenced on April 18, 1997. Judgment was entered on April 30, 1997. Excluding weekends, *see* Fed. R.App.P. 26(a)(2), his conviction became final on May 14, 1997, when his time to file notice of appeal expired, *see* Fed.R.App.P. 4(b)(1)(A)(i), giving him until May 14, 1998 to file for relief under § 2255.[4]

■ Pollack acknowledges that his October 1999 filing is well outside the one-year period applicable to § 2255 motions. For this reason, he seeks relief under § 2241(c)(3), which has no limitations period. As the Second Circuit made plain in *Triestman v. United States,* 124 F.3d 361, 377 (2d Cir.1997), however, § 2241 is not available in all cases in which " § 2255 is either unavailable or unsuccessful." *Id.* Indeed, if every federal prisoner who faced "a substantive or procedural barrier to § 2255 relief" was "entitled to petition for a writ of habeas corpus under § 2241(c)(3), then Congress would have accomplished nothing at all in its attempts—through statutes like the AEDPA—to place limits on federal collateral review." *Id.* at 376. In *Triestman,* the Court of Appeals ruled that for a § 2241 petitioner to establish that § 2255 was "inadequate or ineffective to test the legality of his detention," he would have to show (1) that he could not, "for whatever reason, utilize § 2255," and (2) that the "failure to allow for collateral

review" of his claim "would raise serious constitutional questions." *Id.* at 377. The court predicted that those cases raising constitutional questions would "be relatively few." *Id.* at 378. Indeed, the only specific example cited by the *Triestman* court was the continued incarceration of an innocent person. *See id.* at 379. The court concluded that "serious due process questions would arise if Congress were to close off all avenues of redress in such cases, especially when the prisoner could not have raised his claim of innocence—which appears on the record—in an effective fashion at an earlier time." *Id.*

In this case, Pollack is not claiming actual innocence. He cheerfully admits that, among his many frauds, he arranged to have property in Florida burned so that he could file a false insurance claim. His singular complaint is that this conduct should be the subject of a state rather than federal prosecution. This is a claim that he could have raised on any of a number of occasions long before filing for § 2241 relief. It does not offend fundamental principles of justice to place a procedural limitation on the time within which a prisoner can raise such a claim. *See id.* ("a procedural limitation 'is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental' " (quoting *Medina v. California,* 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992))). In short, § 2255 was an adequate and effective vehicle to test the legality of Pollack's conviction for arson.

---

4. Though an amended judgment was entered on May 23, 1997 to reflect Pollack's request to be housed at FCI Coleman, the date by which to calculate his time to file notice of appeal is still April 30, 1997. *See United States v. Walls,* 163 F.3d 146, 147 (2d Cir.1998) ("[o]nly when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal

must be taken ... begin to run anew." (quoting *FTC v. Minneapolis–Honeywell Regulator Co.,* 344 U.S. 206, 211–12, 73 S.Ct. 245, 97 L.Ed. 245 (1952))). Pollack's petition would be untimely even if the court were to use the date of the amended judgment as the trigger date. Using that date, Pollack's time to file notice of appeal would have expired on June 9, 1997, giving him, at the latest, until June 9, 1998 to file for relief under § 2255.

Where, as in this case, a jurisdictional issue first raised in a pretrial motion could have been preserved for review in a number of ways—(1) by putting the government to its burden of proof on the interstate commerce nexus, (2) by pleading guilty without the benefit of an 11(e)(1)(C) sentence, thereby preserving the right of direct appeal, or (3) by filing a timely jurisdictional challenge under § 2255—a petitioner cannot wait more than two years after his conviction has become final to seek review under § 2241. The petition is dismissed as procedurally barred.

## II. *Jurisdictional Challenge*

■ Even if Pollack could bring his jurisdictional challenge pursuant to § 2241, he would not be entitled to have his arson conviction reversed for the simple reason that his claim is without merit.

■ Preliminarily, the court states the obvious principle on which all parties agree: petitioner's guilty plea "admits all of the elements of a formal criminal charge and ... waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987) (citations omitted). There is, however, an important corollary to this principle that Pollack overlooks. To sustain a challenge to jurisdiction, a petitioner "who has pleaded guilty must establish that *the face of the indictment* [or information] discloses that the count or counts to which he pleaded guilty failed to charge a federal offense." *Id.* (citations omitted) (emphasis added). Indeed, unless the count on its face "is so defective that it does not, by any reasonable construction, charge [the offense of conviction]," no relief is warranted. *Id.* (quoting *United States v. Santelises*, 476 F.2d 787, 788 (2d Cir.1973)

**5.** For purposes of this motion, the court continues to be guided by Judge Friendly's decision in *Mennuti*. It nevertheless notes that the Supreme Court has this term granted certiorari review of a Seventh Circuit case on the question of whether 18 U.S.C. § 844(i)

(quoting *United States v. Trollinger*, 415 F.2d 527, 528 (5th Cir.1969))).

That is plainly not this case. The arson count against Pollack read:

> On or about March 24, 1992, within the Southern District of Florida, the defendant, Sanford E. Pollack, did maliciously damage and destroy a building and other real and personal property used in an activity affecting interstate commerce, to wit: a home used as rental and business property, located at 8644 Wendy Circle, West Palm Beach, Florida, by means of fire.

Superseding Information, Count I. Not only did this plead the interstate commerce element, it specifically alleged that the nexus was established by using the home as rental and business property. The court finds that the information, on its face, satisfactorily establishes federal jurisdiction pursuant to applicable Supreme Court and Second Circuit interpretations of 18 U.S.C. § 844(i). *See Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985) (rental property affects interstate commerce for purposes of federal arson prosecution); *cf. United States v. Mennuti*, 639 F.2d 107 (2d Cir.1981) (residential property is not used in interstate commerce simply because it is financed through an interstate lending institution or because it uses goods and supplies that travel in interstate commerce).[5]

■ In fact, Pollack's real complaint is not with the jurisdictional pleading in the information. His argument is that there is no evidence to support the alleged jurisdiction. Having pleaded guilty, Pollack cannot now challenge the government's ability to adduce evidence in support of the pleadings. As the Second Circuit explained in *Hayle v. United States:*

> applies to the arson of a private residence. *See United States v. Jones*, 178 F.3d 479 (7th Cir.) (arson of residential property could be prosecuted under § 844(i)), *cert. granted,* —— U.S. ——, 120 S.Ct. 494, 145 L.Ed.2d 381 (1999).

The requirement that the alleged jurisdictional defect be apparent from the face of the indictment reflects the line between issues that go to the court's power to entertain the prosecution and those that go merely to the government's ability to prove its case. If the indictment alleges all of the statutory elements of a federal offense and the defendant's contention is that in fact certain of those elements are lacking, the challenge goes to the merits of the prosecution, not to the jurisdiction of the court to entertain the case. . . . .

815 F.2d at 882.

■ Pollack ignores this principle and urges this court to vacate his arson conviction, asserting that neither his own allocution nor the government's proffer in the pretrial argument about jurisdiction establishes the requisite interstate commercial use of the Florida property. This court disagrees and reminds Pollack that the facts must be viewed in the light most favorable to the government.

At the time of his guilty plea, Pollack stated under oath that the Florida property "was used in interstate commerce." Transcript, Feb. 5, 1997, at 36. It is in light of this unequivocal solemn admission on the previously disputed issue of jurisdiction that Pollack's other allocution statements and the government's proffers must be viewed. Pollack explained that the Florida vacation home was owned in part by him and in part by a subchapter S corporation that he had set up in New York. Pollack arranged for the corporation to "rent" the Florida property to one of his New York clients for $4,000 per month so that Pollack could avoid reporting personal income from the client. In fact, the property was never really in the rental market in the traditional way described in *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829. But that hardly makes Pollack the average homeowner contemplated in *United States v. Mennuti*, 639 F.2d 107. Pollack had made a conscious decision to "use" the Florida home as a business asset related to two interstate commercial ventures: his law practice and his corporate activities. By doing so, Pollack sought to maximize the disposable income he derived from these two interstate ventures. Further, Pollack, whose offices were in New Jersey, admitted that whenever he visited the Florida property, he used an instrumentality of interstate commerce, a telephone, at that site to conduct his nationwide law practice. Indeed, the government proffered that Pollack, who maintained no Florida office, installed a facsimile machine at the Florida home whenever he was in residence to allow him to receive and transmit business documents over telephone lines. This court did not ask to review the petitioner's Florida telephone records to ascertain the scope of Pollack's business dealings from that location. There was not need to in light of still more evidence of the property's interstate commercial use. Pollack arranged for his New York corporation to pay many of the expenses incurred in running, maintaining, and repairing the Florida property, using a corporate account at Bank Leumi in New York. The New York corporation then took tax deductions for these Florida outlays, which presumably would not have been available to Pollack as an individual using the property exclusively as a residence.

When all petitioner's machinations are viewed in the light most favorable to the government, it is apparent that there was a substantial interstate commerce nexus between Pollack's use of the Florida property and his numerous schemes to maximize the proceeds from his nationwide law practice and corporate affairs. The jurisdictional challenge to Pollack's federal arson conviction is rejected as without merit.

### Conclusion

For the reasons stated, this court concludes that Pollack's § 2241 motion to vacate his arson conviction is both procedurally barred and without merit. The petition is hereby denied. It is unclear whether the certificate of appealability re-

quirements of 28 U.S.C. § 2253(c)(1) apply when review is sought from the denial of a § 2241 rather than § 2255 petition. Nevertheless, in order to avoid any bureaucratic delay that might ensue should petitioner seek to appeal, this court hereby grants Pollack a certificate of appealability.

*SO ORDERED.*